**Kenneth KEEBLE III and Sherry Keeble, Plaintiffs,**

v.

**Richard CISNEROS, et al., Defendants.**

Civ. A. No. V–85–37.

United States District Court,
S.D. Texas,
Victoria Division.

Jan. 15, 1987.

Kenneth Keeble, III, pro se.

James G. Stouffer, Jr., Cullen, Carsner and Cullen, Mark B. Taylor, Victoria, for defendants.

## MEMORANDUM AND ORDER

KAZEN, District Judge.

The Plaintiffs have filed a *pro se* amended complaint setting forth their claim under 42 U.S.C. § 1983. The Plaintiffs seek monetary damages alleging that the Defendants violated the Plaintiffs' constitutional right to due process by destroying the Plaintiffs' "pet" monkey. Defendants assert, inter alia, the defense of immunity. Pending are motions for summary judgment by the Defendants. While the Court is not unsympathetic to the Plaintiffs' loss, it concludes that the Defendants were following state law, acting within their official capacities, and are thus immune from civil liability. The Court also concludes that the County and City of Victoria are not liable for damages.

In order to control and eradicate rabies, the Texas legislature enacted the Rabies Control Act of 1981 ("Act"), Tex.Rev.Civ. Stat.Ann. art. 4477–6a (Vernon Supp.1987). The Act designates the Texas Board of Health ("TBH"), with county and municipal cooperation, to administer and adopt the rules necessary for the Act's effective administration. V.A.C.S. art. 4477–6a §§ 1.02, 2.01(a) & (f). To that end, the TBH has promulgated its Rabies Control and Eradication Regulations ("Regs.").

The Act defines "animal" as "a warm-blooded animal" (§ 1.03(1)), and also defines the terms "dog," "cat," "stray," and "quarantine." § 1.03(3), (6), (9), & (11). Local health authorities are designated to investigate animal bites and scratches (§ 3.03(c)), and shall quarantine any animal believed to be rabid or which has exposed an individual (§ 3.04(a)). If a veterinarian determines that a quarantined animal shows the clinical signs of rabies, the animal shall be humanely destroyed. § 3.04(d). However, if a veterinarian determines that the animal is not rabid, it shall be released to its owner as long as the animal has a valid rabies vaccination certificate, and the owner has paid reasonable quarantine costs. §§ 3.04(e) & (f). The TBH Regs. additionally define "wild animal" as "any mammal except the common domestic species (dogs, cats, horses, cattle, swine, sheep, and goats) regardless of state of [sic] duration of captivity." Reg. 301.-58.03.002(j). Furthermore, the Regs. state that "[n]o wild animal will be placed in quarantine ... [and if] involved in biting incidents will be humanely killed ..." Reg. 301.58.03.007(b). The Act declares that its provisions and/or the TBH Regs. are the minimum standards for rabies control. V.A.C.S. art. 4477–6a § 3.01(a). Counties and municipalities are free to adopt more stringent provisions. §§ 3.01(b) & (c).

Within this statutory framework, the pleadings and affidavits establish the following facts. The Plaintiffs, Mr. & Mrs. Kenneth Keeble, were the owners of a female Cinnamon Capuchin monkey named Koko, and Mr. Keeble is a licensed animal exhibitor under the federal Animal Welfare Act, 7 U.S.C. § 2131, *et seq.* The individual Defendants are Justice of the Peace Richard Cisneros; George Filley III, Victoria County District Attorney; Steve Moyik,

Assistant District Attorney; Dwight Williamson, the City-County Health Department Animal Control Superintendent; Jim Walpole, a City Animal Control Officer; and Nelda Foster, the City Chief Animal Control Officer. The City and County are also named Defendants.

On or about Friday, June 28, 1985, while Koko was apparently in a cage adjacent to the Plaintiffs' mobile home, she allegedly bit a 3-year old girl, Christina Neitch, on the right index finger. Christina was taken to Citizen's Medical Center for treatment. Although Plaintiffs' unverified amended complaint alleges that the child was not bitten by Koko, another Animal Control Officer, Kevin Eilers, has sworn that the child's aunt complained to him of a bite and claimed to have personally witnessed the bite. Eilers also swears that Mrs. Keeble later acknowledged a bite had occurred. Plaintiffs do not controvert this testimony. Moreover, they furnish no evidence to show how they would know that a bite did not occur.

The following Monday, Williamson telephoned Louis F. Boening, D.V.M., the State Health Department Regional Veterinarian, for advice "on how the monkey should be handled." Dr. Boening recommended that Koko be destroyed. Dr. Boening recommends that "wild animals" should not be placed in quarantine but immediately destroyed, because they cannot effectively be vaccinated against rabies. For the rest of that week, Foster was in contact with Moyik and Cisneros "trying to find out what legal procedures should be followed to enforce the state Rabies Control Act." She took excerpts of the state regulations to Cisneros and then took Dr. Boening to visit with Cisneros. Subsequently, Moyik prepared a Search and Arrest Warrant for Koko, supported by a factual affidavit. On July 9th, Walpole signed the affidavit and Cisneros signed the warrant. That same day, Walpole, and two sheriff's deputies went to the Keebles' mobile home, found that no one was at home, and seized Koko from her cage. Walpole then brought Koko before Cisneros who ordered that she be euthanized for rabies testing. Plaintiffs' unverified response asserts that in

fact Judge Cisneros did not see the monkey until it was already dead. Again, they do not explain the basis for this assertion. In any event, they do not controvert the fact that Judge Cisneros ordered the execution. Whether Cisneros saw the monkey before or after the execution is irrelevant. That same evening, July 9th, Nelda Foster, asphyxiated Koko with carbon monoxide gas. Foster then decapitated Koko, and the head was sent to the State Health Department in Austin for rabies testing.

 Against this statutory and factual background, the various individual Defendants claim absolute and qualified immunity. This Court is required to address the immunity issue promptly because officials who are legally immune are not only free from ultimate liability but also from trial and preparation for trial. *Elliott v. Perez,* 751 F.2d 1472, 1478 (CA5 1985). Judge Cisneros was acting in his judicial capacity at all pertinent times. It is well established that judges are immune from liability for acts committed within their judicial jurisdiction, even if the judge is accused of acting maliciously and corruptly. *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967).

 Prosecutors similarly enjoy absolute immunity in initiating prosecutions and presenting the state's case. *Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 995–96, 47 L.Ed.2d 128 (1976). If the prosecutor makes an investigative decision, such as whether to conduct a search and seizure, he is still entitled to a qualified immunity. *Marrero v. City of Hialeah,* 625 F.2d 499, 508 (CA5 1980). The various animal control officers are also entitled to a qualified immunity for acts done in their official capacity which require the exercise of judgment. *Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982); *Gagne v. City of Galveston,* 805 F.2d 558 (CA5 1986).

 A qualified immunity protects a public official from liability unless his conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,*

457 U.S. at 818, 102 S.Ct. at 2738. The summary judgment evidence shows that Plaintiffs cannot meet this burden as a matter of law.

 As to Defendant Filley, Plaintiffs do not allege any action on his part. The amended complaint names him only in connection with an incident eleven months earlier involving the male Plaintiff's brother and mother. As for Moyik, the evidence shows only that he prepared the affidavit and search warrant to be signed by the complaining officer and judge, respectively. The affidavits of the various animal control officers demonstrate that this was done in response to their reports that in fact a monkey had bitten a child. The three animal control officers merely took various intermediary roles in reporting the incident to the proper authorities, and then implementing the court order. A child was reported to have been bitten by an animal, and pursuant to the Act the local health officials investigated the incident. After consulting with the state regional veterinarian and reviewing state regulations, an assistant district attorney drafted a search and arrest warrant, which was signed by the justice of the peace. Following Koko's seizure, she was destroyed without quarantine, as dictated by state regulations for "wild animals." All of these actions were in conformity with state law.

It may well be, as Plaintiffs suggest, that the state law and regulations on rabies control are subject to legitimate debate on such questions as whether a monkey is necessarily a "wild animal" regardless of the state or duration of its captivity, whether quarantine is appropriate for monkeys, etc. The point is that the Defendants followed state law as written. Plaintiffs do not contend, nor has the Court found, that the Act or regulations had been declared unconstitutional prior to the incident in question or that their validity had even been challenged. Even assuming those laws have defects, it simply cannot be said that the Defendants should reasonably have known that the laws were "clearly" unconstitutional.

▪ The effort to sue the city and county must likewise fail. Local govern-mental bodies can be sued directly under § 1983 for monetary damages only where "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Here, the Defendants acted under state law, not local laws. While Victoria County has adopted rabies control regulations, those regulations essentially parrot the state regulations with respect to handling bites by "wild animals." It is state law which defines a monkey as a "wild animal" and which authorizes the destruction of "wild animals" without a quarantine period. The Eleventh Amendment prohibits actions for monetary relief against the state, and this prohibition applies to a local government where it merely acts in place of the state. *See Familias Unidas v. Briscoe,* 619 F.2d 391, 404–05 (CA5 1980).

In summary, all Defendants have established the defense of immunity as a matter of law and are entitled to summary judgment. The judgment will be without prejudice to Plaintiffs filing in state court any appropriate action for damages under state law.